```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                          ATHENS DIVISION
```

MERIAL LIMITED,                  *

    Plaintiff,                   *

vs.                              *
                                        CASE NO. 3:14-CV-38 (CDL)
ELANCO ANIMAL HEALTH, *a*       *
*division of Eli Lilly & Co.*
                                     *

    Defendant.                   *

                                        *

## O R D E R

Defendant Elanco Animal Health claims that its competitor, Plaintiff Merial Limited, falsely advertised that dogs prefer Merial's flea medication to Elanco's flea medication by a 19-to-1 margin. Merial seeks a declaratory judgment that it did not engage in false advertising. Merial contends that its advertising statements are supported by data, but Merial also asserts that the data is proprietary and confidential, akin to a trade secret. So, Merial designated the documents containing the data as "HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY," which means that Elanco's attorneys (including one in-house attorney) and expert witnesses may see the documents to prepare for trial, but other Elanco employees may not. Elanco filed a motion to de-designate four documents. For the reasons set forth below, Elanco's Motion to De-Designate (ECF No. 27) is granted in part and denied in part. Summary Report Nex/COM

Preference Studies (MERIAL-000191 to MERIAL-000192) is de-designated entirely. The other three documents may remain designated as "HIGHLY CONFIDENTIAL."

DISCUSSION

Under Federal Rule of Civil Procedure 26(c), the Court may issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). But "calling a document confidential does not make it so in the eyes of the court." *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002). Instead, the key question is whether there is "good cause" for Rule 26(c) protection. *Id.; accord Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam). "This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune Co.*, 263 F.3d at 1313. First, the Court must determine whether the documents do actually contain trade secrets or confidential research. *Id.* If they do, then the Court must balance Merial's interest in keeping the information confidential against Elanco's contention that the public has an interest that would be served by de-designating it. *See id.* at 1314-15 (suggesting that if

2

confidential information significantly impacts the public's health and safety, the balancing test favors unsealing the documents).

Here, the Court issued a protective order pursuant to Rule 26(c) stating that the parties could designate as "HIGHLY CONFIDENTIAL INFORMATION - ATTORNEYS' EYES ONLY" documents that are "highly confidential or sensitive, including, but not limited to, technical information, pricing and revenue information and other sensitive financial data." Protective Order § 2(B)(2), ECF No. 17. Merial designated as "HIGHLY CONFIDENTIAL" a number of documents, including the following:

1. SUMMARY REPORT NexGard™ (afoxolaner) Acceptability Field Study (MERIAL-000009 to MERIAL-000190)

2. Summary Report Nex/COM Preference Studies (MERIAL-000191 to MERIAL-000192)

3. Final Report VS-USA-72401 (MERIAL-000193 to MERIAL-000205)

4. Final Report VS-USA-72402 (MERIAL-000206 to MERIAL-000218)

The first document is a study evaluating how well dogs accepted Merial's flea medication. The other three summarize studies testing whether dogs prefer Merial's flea medication to Elanco's. Elanco contends that Merial will use these documents to support its assertion that dogs prefer Merial's flea medication to Elanco's. Again, although Elanco's expert witnesses and attorneys have been permitted to review the

3

documents, Elanco's employees other than one in-house attorney have not.  The documents do not appear to contain any specific technical information about Merial's product or sensitive financial information.  Three of them do, however, contain extensive raw scientific data regarding Merial's clinical trials.  And one contains a lengthy list of Merial's customers and potential customers, including the names of veterinary clinics and dog owners that participated in the study.

Merial does not object to de-designating Summary Report Nex/COM Preference Studies, MERIAL-000191 to MERIAL-000192, as "CONFIDENTIAL" rather than "HIGHLY CONFIDENTIAL."  This document is a short summary of a preference study comparing Merial's product to Elanco's.  The summary discloses (1) the number of dogs used in the study, (2) a brief overview of the methodology, and (3) a short report of the results.  Merial did not clearly articulate why this document should remain confidential.  Elanco pointed to evidence that Merial presented high-level results of the study at the Southwest Vet Symposium.  Def.'s Reply in Supp. of Mot. to De-Designate Ex. M, Flea Control in the 21st Century at MERIAL-014085, ECF No. 43-5 at 35 (stating number of dogs, a brief overview of study methodology, and a summary of the results).  Elanco also pointed to evidence that Merial recently published a study that disclosed its methodology in a similar study comparing Merial's NexGard product to a chewable flea

4

medication tablet manufactured by Intervet Inc. *See* Def.'s Reply in Supp. of Mot. to De-Designate Ex. J, Lénaïg Halos, et al., *Preference of Dogs between Two Commercially Available Oral Formulations of Ectoparasiticide Containing Isoxazolines, Afoxolaner or Fluralaner*, Open Journal of Veterinary Medicine 5, 25-29 (2015), ECF No. 43-2; *see also* Def.'s Reply Ex. K, Carithers Dep. Excerpt 69:15-21 (stating that study design and methodology for NexGard versus Intervet's product were no different than study design and methodology for NexGard versus Elanco's product).

In general, information is not a trade secret if there are no reasonable efforts to maintain the information's secrecy. *See* O.C.G.A. § 10-1-761(4)(B) (stating that "trade secret" means information that "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"); *see also Chicago Tribune Co.*, 263 F.3d at 1313-14 (noting that to be a trade secret, information must be treated as a closely guarded secret, be of substantial value to its owner, be valuable to competitors, and "derive[] its value by virtue of the effort of its creation and lack of dissemination"). Because Merial has already publicly disclosed the high-level version of its study protocols and methodology that are contained in Summary Report Nex/COM Preference Studies, the Court cannot find that this information is entitled to Rule 26(c) protection.

Therefore, Merial must produce Summary Report Nex/COM Preference Studies (MERIAL-000191 to MERIAL-000192) to Elanco without a confidentiality designation.

Merial objects to de-designation of the other three documents on two main grounds. First, Merial contends that the scientific data contained in all three documents is proprietary and that Merial should not be required to disclose its detailed protocols, methodologies, and raw scientific data to its competitor. Second, Merial objects to de-designation of the acceptability field study (MERIAL-000009 to MERIAL-000190) because it would disclose to a competitor the names of hundreds of Merial's customers and potential customers who participated in the study. These are both legitimate objections.

With regard to the raw scientific data, even Elanco's representative acknowledges that such information is typically confidential. *See* Pl.'s Resp. to Mot. to De-Designate Ex. 12, Martin Dep. Excerpt 239:12-240:17 (stating that raw scientific data is confidential), ECF No. 39-7. There is no evidence in the present record that Merial did not make reasonable efforts to keep its detailed protocols and raw scientific data secret. Elanco points out that Merial was required to submit some information regarding the preference studies to the U.S. Food and Drug Administration, but Elanco did not point to any authority establishing that confidential information loses its

6

trade secret status when it is involuntarily submitted to a regulatory agency. *See Ga. Dep't of Natural Res. v. Theragenics Corp.*, 273 Ga. 724, 725, 545 S.E.2d 904, 906 (2001) (finding that "compelled governmental disclosure" does not destroy trade secret status of confidential information). The Court concludes that the detailed protocols and raw scientific data are the type of information that should be protected under Rule 26(c).

With regard to the customer information, "a list of actual or potential customers or suppliers which is not commonly known by or available to the public" can be a trade secret under Georgia law. O.C.G.A. § 10-1-761(4). There is no evidence in the present record that Merial did not make reasonable efforts to keep its customer information secret. The Court concludes that the customer information is a trade secret within the meaning of Rule 26(c).

Elanco did not clearly articulate why public disclosure of the three documents at this point in the litigation serves an important interest that trumps Merial's interest in keeping the information confidential. *Cf. Chicago Tribune Co.*, 263 F.3d at 1315 (vacating order unsealing documents because district court had not made factual findings "that the public's health and safety are sufficiently impacted by the information contained in the[] specific documents to trump [the defendant's] interest in keeping trade secret information confidential"). Elanco also

7

did not argue that the documents should be de-designated because the evidence is being relied on in support of or opposition to a pending motion. Rather, Elanco's main argument seems to be that it cannot prepare for trial unless its employees have unfettered access to Merial's confidential documents. But Elanco's attorneys and expert witnesses have access to the documents and can prepare for trial. For all of these reasons, the Court finds that good cause exists to maintain the "HIGHLY CONFIDENTIAL" designation on the NexGard Acceptability Field Study (MERIAL-000009 to MERIAL-000190), Final Report VS-USA-72401 (MERIAL-000193 to MERIAL-000205), and Final Report VS-USA-72402 (MERIAL-000206 to MERIAL-000218).

CONCLUSION

As discussed above, Elanco's Motion to De-Designate (ECF No. 27) is granted in part and denied in part. Summary Report Nex/COM Preference Studies (MERIAL-000191 to MERIAL-000192) is de-designated entirely. The other three documents may remain designated as "HIGHLY CONFIDENTIAL." This ruling does not mean that the documents will be shielded from public disclosure at trial. The Court will take up that issue closer to trial.

IT IS SO ORDERED, this 12th day of March, 2015.

S/Clay D. Land
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA